UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| MILLER KENT CARTER AND MICHAEL LUCAS, PLLC, | ) ) ) |
| Plaintiff, | ) Civil Action No. 10-105-ART ) ) |
| v. | ) ) **MEMORANDUM OPINION** |
| PIKEVILLE MEDICAL CENTER, INC., et al., | ) **& ORDER** ) ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Ali Baba may have gained access to the forty thieves' secret cave simply by saying, "Open, Sesame!" But the door to the federal courthouse does not open quite so easily. Federal courts are courts of limited jurisdiction. To bring a case in federal court, or to remove a case to federal court, the party invoking federal jurisdiction has the burden of establishing by a preponderance of the evidence that the court has jurisdiction. The defendant in this case, HealthPort Technologies, removed a class action from Kentucky state court. R. 1. The plaintiff filed a motion to remand. R. 15. Because HealthPort has not demonstrated by a preponderance of the evidence that the amount in controversy exceeds the minimum jurisdictional requirement, the Court will grant the plaintiff's motion to remand.

## BACKGROUND

This case is about medical records. A Kentucky statute requires hospitals in the state to provide patients with one free copy of their medical records. KY. REV. STAT. § 422.317(1). Hospitals may charge $1 per page for additional copies. *Id.* The plaintiff in this case is Miller

Kent Carter and Michael Lucas, PLLC, a law firm located in Pike County, Kentucky. R. 1, Attach. 1 ¶ 15. The plaintiff filed this action on July 29, 2010, in Pike Circuit Court against the defendants, Pikeville Medical Center and HealthPort Technologies. *Id.* Pikeville Medical Center is a hospital and HealthPort Technologies is a company that provides healthcare information services. *Id.* ¶¶ 16, 18. By contract, HealthPort processes requests for medical records received by Pikeville Medical Center and other hospitals in Kentucky. *Id.* ¶ 49. The plaintiff claims that the defendants violated § 422.317(1) by charging them for copies of their clients' medical records that should have been provided for free. *Id.* ¶¶ 50-54. The plaintiff also claims that the defendants violated the Kentucky Unfair Business Practices Act, KY. REV. STAT. § 367.170, by subjecting the plaintiff to "wrongful collection efforts" for charges for medical records that should have been provided for free. *Id.* ¶ 58.

The plaintiff's complaint in the Kentucky state court seeks certification as a class action. The proposed class contains "[a]ll attorney representatives who were unlawfully billed by Defendants for free medical record copies." *Id.* ¶ 62. The plaintiff also seeks to certify a class of all similarly situated defendants—i.e., "Kentucky hospitals, physicians and clinics who have contracted with HealthPort and for whom HealthPort has attempted unlawful billing." *Id.* ¶ 64. HealthPort filed a notice of removal on August 23, 2010. R. 1. The plaintiff filed a motion to remand, R. 15, to which HealthPort responded, R. 20, and the plaintiff replied, R. 26.

## DISCUSSION

Under the Class Action Fairness Act ("CAFA"), district courts have original jurisdiction over state law class actions in which the aggregate amount in controversy exceeds $5,000,000

and at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2). Class actions meeting these requirements can either be brought directly in federal court or removed to federal court under 28 U.S.C. § 1441. The CAFA lowered the jurisdictional hurdle for class actions in federal court, but it did not eliminate the hurdle entirely. The party invoking federal jurisdiction—in this case, HealthPort—bears the "burden of demonstrating, by a preponderance of the evidence," that the diversity and amount in controversy requirements have been met. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007). As the plaintiff concedes, the minimum diversity requirement is satisfied. R. 15, Attach. 1 at 2. The plaintiff is a citizen of Kentucky and HealthPort is a citizen of Georgia. R. 1 ¶¶ 2, 3. Therefore, this action may remain in federal court if HealthPort demonstrates by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "If the defendant fails to satisfy this burden . . . then the federal court is without subject matter jurisdiction to hear the case." *King v. Household Fin. Corp. II*, 593 F. Supp. 2d 958, 959 (E.D. Ky. 2009).

HealthPort has not carried its burden. This failure stems primarily from HealthPort's inadequate attempts to demonstrate the amount of the compensatory damages sought in the class action. The plaintiff class seeks compensatory damages for all class members who were unlawfully charged for medical records over a five-year period beginning on July 28, 2005. R. 1, Attach. 1. HealthPort contends that the compensatory damages would total roughly $2,000,000. R. 1 ¶ 20. This is how HealthPort arrives at that figure: In 2009, HealthPort copied

nearly 400,000 pages of medical records for patients in Kentucky.[1] HealthPort has generated fairly consistent revenues in Kentucky over the relevant time period, so HealthPort estimates that it copied approximately 400,000 pages of medical records in each of the five years that the class action covers. Assuming that HealthPort charged $1.00 per page, this would mean that HealthPort charged $400,000 per year for medical records for Kentucky patients—a total of $2,000,000 over five years. *See id.* If these charges were in violation of Kentucky law, HealthPort claims that the compensatory damages could be at least $2,000,000. From this baseline of $2,000,000 in compensatory damages, HealthPort argues that damages for unlawful collection practices, possible punitive damages, attorney's fees, and the costs of complying with the plaintiff's requested injunction exceed $5,000,000.

HealthPort has built its jurisdictional argument on a foundation of quicksand. Its estimate of $2,000,000 in compensatory damages bears no relation to the amount that the plaintiff class actually seeks. $2,000,000 represents HealthPort's estimate of the revenue it received from *all* medical records requests for Kentucky patients over five years. But the plaintiff class does not seek damages for all medical records requests. They seek damages for a much smaller subset—those medical records (a) that were requested by members of the putative class, *i.e.*,

---

[1] HealthPort sets forth these figures in its notice of removal. R. 1 ¶ 20. It is questionable whether these bald averments are enough to satisfy the amount in controversy requirement. After all, the removing defendant has the burden of proving by a preponderance of the *evidence* that the amount in controversy exceeds $5,000,000. *See Smith*, 505 F.3d at 404. Simple averments in the notice of removal may not be sufficient absent affidavits or some other concrete evidence to back them up. But the Court need not decide now whether HealthPort's averments, standing alone, constitute sufficient evidence because the averments themselves do not demonstrate that the amount in controversy exceeds $5,000,000.

attorneys and legal representatives seeking their patients' medical records; (b) that should have been provided for free under KY. REV. STAT. § 422.317(1), *i.e.*, requests for the *first* copy of the patients' medical records; and (c) for which HealthPort unlawfully charged a fee. The $2,000,000 figure includes revenue from many records requests that are simply irrelevant to the class action, including requests made by the patients themselves (not their attorneys) and second and subsequent requests, which Kentucky law does not require to be provided for free.

To further illustrate why the figures HealthPort provides are insufficient to establish the amount of compensatory damages that the plaintiff class seeks, consider the following example. A biomedical company manufactures approximately 10,000 artificial knee replacement joints every year. Some of the knee replacement joints are defective. After being implanted, these joints chip away at the surrounding bone causing them to become loose and requiring corrective surgery. This defect only impacts people with weak bones—namely, women with osteoporosis. A plaintiff brings a class action against the biomedical company on behalf of all women with osteoporosis who received defective knee replacement joints over a ten year period. The biomedical company responds that it sold approximately 100,000 joints over that period. At a cost of $1,000 per joint, the company claims that the amount in controversy requirement is easily met. But the biomedical company's assertion falls short for the same reason that HealthPort's assertion falls short. The plaintiff class in this hypothetical is not seeking damages for *all* of the knee replacement joints that the company manufactured. The plaintiff class is only seeking damages for a much smaller subclass—those joints that were defective and that were used in female patients with osteoporosis. Simply providing the total number of knee replacement joints

sheds only the dimmest light on the possible compensatory damages that the biomedical company faces. Similarly here, providing only the total number of medical records copies made for all patients in Kentucky provides very little indication of the possible compensatory damages in this case.

HealthPort protests that it would be too time-consuming and expensive for it to determine which medical records requests fall within the scope of the class action and which fall outside the scope. R. 20 at 5-6. HealthPort claims that doing so would require it to cull through numerous sets of requests and determine whether they were submitted by attorneys or legal representatives and whether HealthPort unlawfully charged a fee. *Id*. In other words, HealthPort says that meeting its burden is too burdensome. This argument gets HealthPort nowhere. This case was pending before a perfectly competent court in the Commonwealth of Kentucky and HealthPort *chose* to remove it to federal court. HealthPort took upon itself the burden of establishing by a preponderance of the evidence that the case satisfies the prerequisites for federal jurisdiction. Having elected to shoulder this burden, HealthPort cannot now claim that it is too heavy.

And besides, courts do not generally excuse parties from carrying their burdens just because doing so is difficult. Imagine if a court excused the government from having to prove a criminal defendant guilty beyond a reasonable doubt because evidence of guilt was hard to find. While HealthPort is not required to "research, state and prove the plaintiff's claim for damages" with exactitude, *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 159 (6th Cir. 1993), merely establishing that the amount in controversy "may" exceed $5,000,000 is not enough. *Id*. The

standard is a preponderance of the evidence. *Id.* HealthPort bears the burden of proving that the amount in controversy "more likely than not" exceeds $5,000,000. *Id*. at 958. HealthPort's failure to carry its burden renders the Court's effort to determine the amount of compensatory damages "a matter of judicial star-gazing." *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 771 (6th Cir. 2009). The Court will not use its telescope to search for jurisdiction where the removing party has not demonstrated that it exists.

For the same reason, HealthPort has also failed to carry its burden in establishing the amount of compensatory damages that the plaintiff class seeks for "wrongful collection efforts, including referral to credit reporting and collection entities." R. 1, Attach. 1 ¶¶ 58, 60. Once again, HealthPort has not come forward with any evidence whatsoever establishing what these compensatory damages might be. HealthPort has not informed the Court how many of the 400,000 pages of medical records requested per year were requested by members of the putative class, much less how many of the requests made by this smaller subset were referred to collection agencies or credit bureaus. Here again, determining the possible compensatory damages for this claim would require the Court to use a Ouija board. That is not something the Court is willing, or permitted, to do.

HealthPort's failure to establish the amount of compensatory damages by a preponderance of the evidence dooms its attempts to reach the $5,000,000 jurisdictional threshold by aggregating other damages and costs that the plaintiff class seeks. First, HealthPort asks the Court to include the punitive damages sought in the complaint in the amount in controversy. While the Court must consider punitive damages "unless it is apparent to a legal

standard is a preponderance of the evidence. *Id.* HealthPort bears the burden of proving that the amount in controversy "more likely than not" exceeds $5,000,000. *Id*. at 958. HealthPort's failure to carry its burden renders the Court's effort to determine the amount of compensatory damages "a matter of judicial star-gazing." *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 771 (6th Cir. 2009). The Court will not use its telescope to search for jurisdiction where the removing party has not demonstrated that it exists.

For the same reason, HealthPort has also failed to carry its burden in establishing the amount of compensatory damages that the plaintiff class seeks for "wrongful collection efforts, including referral to credit reporting and collection entities." R. 1, Attach. 1 ¶¶ 58, 60. Once again, HealthPort has not come forward with any evidence whatsoever establishing what these compensatory damages might be. HealthPort has not informed the Court how many of the 400,000 pages of medical records requested per year were requested by members of the putative class, much less how many of the requests made by this smaller subset were referred to collection agencies or credit bureaus. Here again, determining the possible compensatory damages for this claim would require the Court to use a Ouija board. That is not something the Court is willing, or permitted, to do.

HealthPort's failure to establish the amount of compensatory damages by a preponderance of the evidence dooms its attempts to reach the $5,000,000 jurisdictional threshold by aggregating other damages and costs that the plaintiff class seeks. First, HealthPort asks the Court to include the punitive damages sought in the complaint in the amount in controversy. While the Court must consider punitive damages "unless it is apparent to a legal

certainty that [they] cannot be recovered," *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001), HealthPort has not demonstrated the amount of the potential punitive damages by a preponderance of the evidence. Even if the jury were to award punitive damages at the upper limit of what the Supreme Court has indicated is constitutionally permissible—perhaps nine times the compensatory damages, *see State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)—that figure is still a null set because HealthPort has not established *any* compensatory damages by a preponderance of the evidence. Nine times zero is still zero.

Next, HealthPort asks the Court to consider the costs of complying with the plaintiff class's requested injunction as part of the amount in controversy. The complaint filed in state court seeks an order enjoining the defendants from violating Kentucky law by unlawfully charging for medical records that should be provided for free. R. 1, Attach. 1 ¶ 74d. It is true that the "costs of complying with an injunction, whether sought by one plaintiff or many plaintiffs, may establish the amount in controversy." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). But HealthPort still bears the burden of establishing these costs by a preponderance of the evidence. *Id.* Like the compensatory damages and the punitive damages, HealthPort has not carried this burden. HealthPort provides absolutely no evidence of what it would cost to comply with the injunction. Even if the Court were to accept the highest possible figure—the lost revenue from not being able to charge for a plaintiff's first request for medical

records[2]—HealthPort has not provided any evidence demonstrating the number of records requests on which it would have to forego revenue. As previously explained, HealthPort's general figure of 400,000 pages of medical records per year is broadly over-inclusive, and therefore is insufficient. Accordingly, HealthPort has failed to establish the costs of complying with the plaintiff's requested injunction by a preponderance of the evidence.

Finally, HealthPort asks the Court to include the attorney's fees that the plaintiff has demanded in the amount in controversy. The Court will not consider attorney's fees as part of the amount in controversy in this case. "As a general rule, attorneys' fees are excludable in determining the amount in controversy . . . unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). HealthPort has not identified any statute that mandates or expressly allows the plaintiff class to recover attorney's fees. Although HealthPort directs the Court to KY. REV. STAT. § 367.220(3), which allows a court to award a prevailing party "reasonable attorney's fees and costs," that statute does not apply to this case. It only applies to actions by "person[s] who purchase[] or lease[] goods or services primarily for *personal, family or household purposes*." *Id.* § 367.220(1) (emphasis added). In this case, the members of the

---

[2] And it is highly questionable whether HealthPort's lost revenues are the correct measure of the cost of complying with the proposed injunction. Revenues and costs are two different things. HealthPort may receive one dollar in revenues for each page of medical records it copies, but the amount it would cost HealthPort to comply with Kentucky law and provide each patient one copy for free could be significantly less than one dollar per page. But the Court need not delve into this distinction between revenues and costs to resolve the motion currently before it. Even granting HealthPort the benefit of the doubt and using the foregone revenues as the measure of the cost of compliance, HealthPort still has not established by a preponderance of the evidence that the lost revenues would elevate the amount in controversy over $5,000,000.

plaintiff class requested medical records for use in representing their clients, not for "personal, family or household purposes." Accordingly, § 367.220(3) does not mandate or expressly allow the plaintiff class to recover attorney's fees. Therefore, the Court will not consider attorney's fees in determining the amount in controversy.

For all of these reasons, HealthPort has not carried its burden of demonstrating by a preponderance of the evidence that the aggregate amount in controversy exceeds $5,000,000. HealthPort has provided *some* information from which a reasonable person *could* infer that the amount in controversy is greater than $5,000,000. It is possible that a large percentage of the medical records requests that HealthPort processed each year were first requests for a patient's medical records made by the patient's attorney or legal representative. It is possible that a large number of class members were subjected to improper collection efforts. It is possible that the Court could apply a punitive damages multiplier to the compensatory award. It is possible that the costs of complying with the requested injunction will be significant. And it is possible that all of these amounts added together could exceed $5,000,000. But a mere possibility is not enough. *See Gafford*, 997 F.2d at 158. After reviewing HealthPort's limited averments and resolving "all doubts as to the propriety of removal . . . in favor of remand," *Smith*, 505 F.3d at 405, HealthPort has not established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Therefore, the Court will remand this case back to the Pike Circuit Court.

Because the Court is remanding on the ground that HealthPort has not established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, the Court

does not reach the plaintiff's alternative arguments that the CAFA's "home-state" and "local-controversy" exceptions apply.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

   (1)   The plaintiff's motion to remand, R. 15, is **GRANTED**.

   (2)   This case is **REMANDED** to the Pike Circuit Court.

   (3)   All pending motions are **DENIED AS MOOT**.

   (4)   This case shall be **STRICKEN** from the Court's active docket.

This the 1st day of November, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge